IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOISES DOLORES, EDUARDO CASTELAN, GELACIO REYES and GREGORIO MIRANDA, Individually and on Behalf of all other Employees Similarly Situated,<br><br>      Plaintiffs,<br><br>-against-<br><br>EUROPAN CAFÉ, LLC d/b/a EUROPAN, THEODOROU HRISTOS, FRANK PARENTE, EVANGELOS GAVALS, NICK GLENDIS, JAMES NICOZISIS and JOHN DOES #1-10, Jointly and Severally,<br><br>      Defendants. | ECF Case<br><br>13 Civ. 7270 (RJS)(JLC) |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between named plaintiffs Moises Dolores, Eduardo Castelan, Gelacio Reyes and Gregorio Miranda (collectively, "Named Plaintiffs"), individually and on behalf of a class of individuals they seek to represent (collectively, "Plaintiffs") and Europan Café, LLC, Hristos Theodorou (identified in the case caption and sued here as "Theodorou Hristos"), Efren Parente (identified in the case caption and sued here as "Frank Parente"), and Nick Glendis (collectively, "Europan" or "Defendants").

1.  **RECITALS AND BACKGROUND**

WHEREAS, a Class & Collective Action Complaint in the above captioned action was filed on October 15, 2013, in which claims were asserted against Defendants under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and New York Labor Law ("NYLL") for the alleged failure to pay minimum and overtime wages and for unpaid spread of hours premium pay to Plaintiffs and all other similarly situated non-exempt employees who worked for Defendants at Europan Café, LLC;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims between Plaintiffs and Defendants, including claims asserted in the Litigation, to avoid further expense, inconvenience and litigation of this matter and to resolve all controversies with respect to Plaintiffs and the claims asserted, or which could have been asserted, relating in any way to the Litigation;

1208522.4
1222097.1

WHEREAS, Defendants have contested and deny all of the allegations made by Plaintiffs in the Litigation, and deny any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation, and a bona fide dispute exists between the Parties regarding Plaintiffs' claims and the basis thereof;

WHEREAS, after extensive discussions regarding the scope of the alleged liability the parties agreed to participate in mediation before Carol Wittenberg of JAMS (the "Mediator"). Prior to mediation, the Plaintiffs exchanged with Defendants a damages analysis and Plaintiffs' counsel had discussions with the Named Plaintiffs and numerous members of the Class before participating in a full-day mediation. With the assistance of the mediator, the parties were able to reach an agreement to settle the Litigation on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing the Litigation.

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on the Plaintiffs and, based upon an analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of all Plaintiffs.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

**1.  DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**  **Agreement.** "Agreement" means this Settlement Agreement and Release.

**1.2**  **Acceptance Period.** "Acceptance Period" means the 180 days that a Class Member has to cash a Settlement Check.

**1.3**  **Class Counsel.** "Class Counsel" shall mean Brent E. Pelton, Esq. and Taylor B. Graham, Esq., Pelton & Associates PC, 111 Broadway, Suite 1503, New York, NY 10006, (212) 385-9700.

**1.4**  **Class Members.** "Class Members" shall mean the Named Plaintiffs, the Opt-in Plaintiffs and all other non-exempt employees who worked, for any length of time, for Europan Café, LLC during the Relevant Statutory Period. Defendants will provide Class Counsel with as much information as is in their possession regarding the Class Members' names, dates of employment, position held, full or part-time employment status and last known addresses, in a confidential document, upon preliminary approval of this Agreement.

**1.5**  **Court.** "Court" means the United States District Court for the Southern District of New York, the Honorable Richard J. Sullivan, presiding.

**1.6**  **Days.** "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.7   **Defendants.** "Defendants" shall mean Europan Café, LLC, Hristos Theodorou (identified in the case caption and sued here as "Theodorou Hristos"), Efren Parente (identified in the case caption and sued here as "Frank Parente"), and Nick Glendis, and, as applicable, each of their present and former owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, heirs, attorneys, and all persons acting by, through, under or in concert with any of them. Europan Café, LLC does not own or operate any food service establishment other than the establishment located at 135 Columbus Avenue in New York, New York. The term "Defendants" shall not include any business entity other than Europan Café, LLC.

1.8   **Defendants' Counsel.** "Defendants' Counsel" shall mean Reed Smith LLP, by Cindy Schmitt Minniti, Esq. and Mark S. Goldstein, Esq., 599 Lexington Avenue, New York, NY 10022.

1.9   **Effective Date.** "Effective Date" of the settlement shall mean the next business day following the date the Court has entered a Final Approval Order approving this executed Agreement, the time to appeal from the Final Approval Order has expired and no notice of appeal has been filed (or if a notice of appeal is filed, the latest of the following, if applicable, has occurred: (1) any appeal from the Final Approval Order has been finally dismissed; (2) the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form substantially identical to the form of the Final Approval Order entered by the Court).

1.12  **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.13  **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.14  **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks, Service Awards, Class Counsel fees and dismissal of the Litigation with prejudice.

1.15  **Litigation.** "Litigation" means the above-captioned case, *Dolores, et al. v. Europan Café, LLC, et al.*, S.D.N.Y. Case No. 13 Civ. 07270.

1.16  **Named Plaintiffs.** "Named Plaintiffs" means Moises Dolores, Eduardo Castelan, Gelacio Reyes and Gregorio Miranda.

1.17  **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Settlement Amount (as defined below in 1.26) after deductions for Court-approved attorneys' fees and costs for Class Counsel, and Service Awards.

1.18  **Notice or Notices.** "Notice" or "Notices" means the Court–approved Notices of Proposed Settlement of Class Action Lawsuit.

**1.19** **Objector.** "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

**1.20** **Opt-in Plaintiffs.** "Opt-in Plaintiffs" means the five (5) individuals, including the Named Plaintiffs, each of whom has joined this Litigation by filing a timely Consent to Become a Party Plaintiff form.

**1.21** **Opt-out Statement.** "Opt-out Statement" is a written signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

**1.22** **Participating Class Members.** "Participating Class Members" are all Class Members who do not submit a valid Opt-out Statement as provided in Section 2.6 herein.

**1.23** **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court: (i) certifying a class of all the Class Members solely for purposes of effectuating the settlement herein; (ii) preliminarily approving the terms and conditions of this Agreement; and (iii) directing the manner and timing of providing Notices to the Class Members.

**1.24** **Released Claims.** "Released Claims" means all claims asserted, or which could have been asserted, under federal, state or local laws by or on behalf of the Class Members arising out of work performed by the Class Members for Europan Café, LLC during the Relevant Statutory Period. The Released Claims include claims that have been brought, or that could have been brought, against Defendants in the Litigation or that are based on the same facts and circumstances as the claims brought, or that could have been brought, against Defendants in the Litigation, including, without limitation, claims under the Fair Labor Standards Act ("FLSA"), New York Labor Laws and any other federal, state or local law or common law relating to or governing the failure to pay wages, overtime wages, minimum wages, unlawful wage deductions, spread of hours, derivative benefit claims (*e.g.*, claims for ERISA and/or non-ERISA benefits resulting from alleged failure to pay any wages and/or overtime), retaliation, liquidated damages, interest, penalties, Service Awards, and attorneys' fees and costs related to such claims. Further, the Named Plaintiffs agree to execute a general release of all claims in favor of Defendants.

**1.25** **Relevant Statutory Period.** The "Relevant Statutory Period" refers to the period between October 15, 2007 and the date of the Preliminary Approval Order.

**1.26** **Settlement Amount.** "Settlement Amount" means Two Hundred Thirty Thousand Dollars and Zero Cents ($230,000.00), which Defendants will pay to fully resolve the Litigation and all Released Claims as set forth in this Agreement. The Settlement Amount is inclusive of all claims for attorney's fees, expenses and costs approved by the Court and all amounts to be paid to all Class Members, including Court-approved Service Awards.

**1.27** **Settlement Checks.** "Settlement Checks" means checks issued by Defendants (or a third-party on Defendants' behalf) to Class Members for the Class Members' share of the Net Settlement Fund.

## 2. INITIAL PROCEDURAL ISSUES

2.1 **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the parties to seek a full and final settlement of the Litigation.

2.2 **Settlement Class.** For purposes of settlement only, the Parties stipulate to class certification pursuant to Fed. R. Civ. P. 23 and CPLR §§901 and 902 to include all Class Members with claims and/or rights to any Released Claims.

2.3 **Responsibilities of Class Counsel.** Class Counsel will be responsible for the mailing of Notices to Class Members in accordance with the Court's Preliminary Approval Order, calculating the payment to each of the Class Members in accordance with the Court's Final Approval Order and will perform claims administration and distribution of the Settlement Checks to Class Members.

Class Counsel shall be responsible for: (i) preparing, printing and disseminating to potential Class Members the Notices; (ii) copying Defendants' Counsel on material correspondence; (iii) preparing, monitoring and maintaining a telephone number with phone answerers until the Effective Date or the nullification of this Agreement as provided in Section 2.6(D) herein, whichever comes first; (iv) receiving, reviewing and promptly furnishing Defendants' Counsel copies of any Opt-out Statements, objections or other written or electronic communications from Class Members which Class Counsel receives; (v) calculating the amount of payment to Class Members and mailing Settlement Checks and Service Awards (as applicable) to Class Members consistent with this Agreement and the Final Approval Order; (vi) responding to inquiries of Class Members regarding procedures for filing objections and Opt-out Statements; (vii) maintaining adequate records of the dates of the mailing of Class Notice(s) and mailing and receipt of Opt-out Statements, returned mail and other communications and attempted written or electronic communications with Class Members; (viii) returning to Defendants' Counsel all undeliverable Settlement Checks after 180 days from the date of mailing; and (ix) confirming in writing to Defendants' Counsel and the Court its completion of the administration of the settlement.

2.4 **Preliminary Approval Motion.**

   (A) With the Preliminary Approval Motion, Class Counsel will submit to the Court, among other things: (1) a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing consistent with the terms of this Agreement; and (2) a proposed Order certifying for purposes of settlement only, the New York State class of all the Class Members with claims and/or rights to any Released Claims under Fed. R. Civ. P. 23 and CPLR §§901 and 902 and approving the settlement, including, if necessary, submitting a certification from the Mediator that the proposed settlement economic terms are the product of arms-length negotiations and represents a fair and reasonable compromise of the claims in the Lawsuit and the Released Claims.

   (B) The proposed Preliminary Approval Order will include the findings required by Fed. R. Civ. P. 23(a) and 23(b)(3) and (as applicable) CPLR §§901 and 902. The Preliminary Approval Motion also will seek the setting of date(s) for individuals to submit Opt-out Statements or provide objections to this Agreement, which date will be thirty (30) days from the mailing of Notice to the

Class Members (which also shall set forth the procedures set forth in Section 2.7 herein), and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(C) In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) approve the proposed Notice to Class Members; (3) incorporate the terms of this Agreement, as described herein; (4) dismiss the Litigation with prejudice; and (5) award Class Counsel fees and costs consistent with the terms of this Agreement.

(D) While the Parties expect that the Preliminary Approval Motion will not be opposed and will be filed upon the consent of the Defendants, Defendants may respond to the Preliminary Motion to ensure that it is consistent with the terms of this Agreement. Any response papers will be due seven (7) days after Plaintiffs file the Preliminary Approval Motion.

(E) If the Court denies the Preliminary Approval Motion, the parties jointly agree to seek reconsideration or appeal of the ruling. In the event such reconsideration or appeal is unsuccessful, the Litigation will resume as if no settlement had been attempted. Defendants retain the right to contest whether the Litigation should be maintained as a class and/or collective action and to contest the merits of the claims being asserted in the Litigation.

(F) The parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

2.5 **Notice to Class Members**

(A) Within five (5) days of the issuance of the Preliminary Approval Order, Defendants will provide Class Counsel with as much information as is in their possession regarding the Class Members' names, dates of employment, position held, full or part-time employment status and last known addresses. Such information shall be treated by Class Counsel as confidential and may be shared or divulged only to the extent necessary to effectuate the settlement of this Lawsuit.

(B) Within ten (10) days of issuance of the Preliminary Approval Order, Class Counsel will mail to all Class Members, via First Class United States Mail, postage prepaid, and keep a written record of the date(s) of such mailing, the Court–approved Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

(C) Class Counsel will take all reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable. Class Counsel will notify Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent

mailing(s) as set forth in this Agreement. For any Class Member whose mailing is returned as undeliverable for which Class Counsel is unable to locate an alternative address, Defendants shall inform Class Counsel of any known alternate addresses or other contact information for attempted re-mailings. All such Class Member personal information will be treated as confidential information by Class Counsel.

**2.6 Class Member Opt-outs.**

(A) Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to Class Counsel stating that he or she is opting out of the settlement. The statement should include his or her name, address and telephone numbers and state, "I opt out of the Europan Café, LLC unpaid wages settlement". To be effective, an Opt-out Statement must be post-marked within forty-five (45) days after Class Counsel mailed the initial Notice.

(B) The end of the time period to opt-out of the settlement ("Opt-out Period") shall be forty-five (45) days after the day on which Class Counsel mails a Notice to a Class Member.

(C) Class Counsel shall serve copies of each Opt-out Statement on Defendants' Counsel not later than three (3) days after receipt thereof. Class Counsel shall also, in connection with its motion for final approval of the settlement, file on ECF copies of any Opt-out Statements. Class Counsel shall, within 24 hours of the end of the Opt-out Period, send a final list of all Opt-out Statements, if any, to Defendants' Counsel by email.

(D) Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement and will be bound by the Final Approval Order in this Litigation and have all Released Claims released and dismissed with prejudice, provided that, notwithstanding any other provision of this Agreement, Defendants shall retain the right, in the exercise of their sole discretion, to nullify the settlement and this Agreement by giving notice, in writing, to Class Counsel and the Court at any time prior to the Fairness Hearing, if 20% or more Class members submit an Opt-out Statement pursuant to this Agreement. In the event of such a nullification, no party may use the fact that the Parties agreed to settle this case as evidence of Defendants' liability in this lawsuit or the lack thereof. Defendants retain the right to contest whether the Litigation should be maintained as a class and/or collective action and to contest the merits of the claims being asserted in the Litigation.

**2.7 Objections to Settlement.**

(A) Class Members who wish to present objections to the proposed settlement and/or this Agreement at the Fairness Hearing must first do so in writing. To be considered, such written statement must be mailed to Class Counsel via First-Class United States Mail, postage prepaid, within forty-five (45) days after Class Counsel mails Notice to such Class Member. The written statement must

                include all reasons for the objection and any reasons not included in the statement will not be considered. The written statement must also include the name, address, and telephone numbers for the Class Member making the objection. Class Counsel will send copies of each objection to Defendants' Counsel by email no later than three (3) days after receipt thereof. Class Counsel will also file the originals of any and all objections with the Court within three (3) days after the end of the Opt-out Period.

      (B)      An individual who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-out Statement may not submit objections to the settlement.

      (C)      The parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.8**    **Fairness Hearing and Motion for Final Approval and Dismissal.**

      (A)      At the Fairness Hearing and in their Motion for Final Approval and Dismissal, the parties, through their respective counsel, will request that the Court, among other things: (1) certify a class of all the Class Members with claims and/or rights to any Released Claims solely for purposes of settlement; (2) approve the settlement and this Agreement as fair, reasonable, adequate, and binding on all Class Members who have not submitted an Opt-Out Statement pursuant to this Agreement; (3) order Defendants to issue Settlement Checks (in the amounts calculated by Class Counsel) to Class Counsel; (4) order Class Counsel to distribute the Settlement Checks to the Class Members; (5) order the attorneys' fees and costs to be paid to Class Counsel from the Settlement Amount; (6) order the dismissal with prejudice of all claims asserted in the Litigation, Released Claims and the claims of all Class Members who did not submit an Opt-Out Statement pursuant to this Agreement; (7) order entry of Final Judgment in accordance with this Agreement; and, (8) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

      (B)      If the Court fails to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the Parties jointly shall seek reconsideration or appellate review of the decision denying final approval of the settlement.

      (C)      If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted. Defendants retain the right to contest whether the Litigation

should be maintained as a class and/or collective action and to contest the merits of the claims being asserted in the Litigation.

(D) Class Counsel will provide notice to Class Members if the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by Class Counsel via First Class United States Mail, postage prepaid, to the addresses used by Class Counsel in mailing the Notices.

**2.9 Releases and Consents to Join.**

(A) Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be issued a Settlement Check by Defendants, through Class Counsel, in accordance with the Final Approval Order.

(B) Each Settlement Check will contain a release and a consent to join this lawsuit under the FLSA. Any Participating Class Member who endorses, deposits, cashes or negotiates his/her Settlement Check thereby automatically releases Defendants from the Released Claims (as defined in Section 1.24 and as set forth in Section 4). Each Settlement Check shall contain the following language: "By endorsing, depositing, cashing, or negotiating this check, I consent to join the FLSA collective action against Defendants styled ***Dolores v. Europan Café, LLC, 13 Civ 7270*** and release Defendants from all Released Claims as set forth in the Settlement Agreement And Release resolving such lawsuit." Each Opt-in Plaintiff (as defined in Section 1.20) hereby releases Defendants from his/her claims under the FLSA irrespective of whether he/she endorses, deposits, cashes or negotiates his/her Settlement Check.

(C) Any Participating Class Member, other than any Opt-in Plaintiff, who does not endorse, deposit, cash, or negotiate his/her Settlement Check will not release Defendants from their claims under the FLSA pursuant to this Agreement.

**3. SETTLEMENT TERMS**

**3.1 Settlement Amount.**

(A) Defendants agree to pay a gross total Settlement Amount of Two Hundred Thirty Thousand Dollars and Zero Cents ($230,000.00), which shall fully resolve and satisfy all claims for damages to be paid to Class Members including, without limitation, costs and attorneys' fees to Class Counsel.

(B) Defendants shall cause the Settlement Checks to be sent to Class Counsel within five (5) days following the Effective Date.

(C) Class Counsel will distribute the Settlement Checks to the Class Members within three (3) days after receipt of the Settlement Checks from Defendants.

(D) Class Members will have one hundred eighty (180) days from the date of mailing to cash their Settlement Check. Class Members may request replacement checks within this one hundred eighty (180) day period so long as a

        (E)      stop-payment hold is able to be placed upon the prior check, without any additional cost incurred by Defendants as a result thereof.

        (E)      Defendants shall not make any statements or in any way discourage Class Members from participating in the settlement, including but not limited to discouraging Class Members from cashing Settlement Checks.

**3.2  Settlement Amounts Payable as Attorneys' Fees and Costs.**

        (A)      At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third (33.33%) of the Settlement Amount, and for reimbursement of their actual litigation costs and expenses up to $4,435.00 to be paid from the Settlement Amount. Defendants will not oppose Class Counsel's application of up to one-third of the Settlement Amount in attorneys' fees plus costs and expenses up to $4,435.00. The costs contained herein do not include administration costs/expenses for Class Counsel. Class Counsel may request such additional costs associated with Settlement Administration at the Fairness Hearing. Class Counsel has the option of retaining a settlement administrator to mail the Court–approved Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing and the Settlement Checks. In the event that a settlement administrator is retained, Class Counsel may seek reimbursement from the Settlement Amount for any such reasonable actual costs associated with settlement administration.

        (B)      The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

**3.3  Service Awards to Named Plaintiffs.**

        (A)      In return for services rendered to the Class Members in serving as Named Plaintiffs in connection with this Lawsuit, at the Fairness Hearing, Named Plaintiffs will apply to the Court to receive no more than $5,000.00 each as a service award (the "Service Award") from the Settlement Amount.

        (B)      The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval and Judgment.

**3.4  Allocation to Class Members.**

        (A)      The Net Settlement Payment shall be distributed to all Class Members according to the following formula:

(1) Compute the total number of weeks worked by each Class Member while working for Europan Café, LLC during the Relevant Statutory Period (each such week being a "Workweek") and assign the following points for each such pay period:

    (a) All Class Members will be assigned 1 point per Workweek when working full time and .2 points per Workweek if and when working part-time;

    (b) All Delivery employees will be assigned a multiplier of 200% based upon their claim of unpaid gratuities; and

    (c) The Named Plaintiffs and Opt-in Plaintiffs shall have their points in Sections 3.4(A)(1)(a) – (b) increased by 150% to account for liquidated damages.

(2) The above formula is subject to adjustments (increased or decreased points) based on information provided to Class Counsel by Defendants and Class Members as to the typical shifts and number of overtime hours actually worked by the Class Members during the Relevant Time Period.

(3) To calculate each Class Members' proportionate share:

    (a) Add all points together to obtain the "Total Denominator";

    (b) Divide the number of points for each Class Member by the Total Denominator to obtain each Class Members' "Portion of the Net Settlement Payment";

    (c) Multiply each Class Members' Portion of the Net Settlement Payment by the Net Settlement Fund to determine each Class Members' "Settlement Award."

(B) The allocation to Participating Class Members for Settlement Checks will be made from the Settlement Amount after deductions for Court-approved Service Awards for the Named Plaintiffs, attorneys' fee and costs for Class Counsel.

(C) Defendants shall not oppose the allocation formula set forth in Section 3.4 above, except to the extent the formula is in any way inconsistent with the terms of this Agreement.

(D) Confidentiality. While the Parties understand that this Settlement Agreement and General Release will be publicly filed by ECF, the Class Members shall each keep their respective settlement allocations confidential regardless of whether or not a Class Member ultimately opts-out of this settlement, except that Class Members have a right to set forth their settlement allocation in any objection filed with the Court under this Agreement. Class Members and Class Counsel shall not talk about, write about, publicize, make available or otherwise disclose the settlement allocation awarded and/or received to any person or entity without the prior written consent of all of the Parties, with the limited exception that each Class Member may disclose

such information to their respective spouses (if any), accountants, attorneys, governmental tax authorities, or under effective subpoena or court order not requested by the Class Member, or if otherwise required by law, provided that, in the event of any such disclosure, the disclosing Class Members shall direct and require their respective spouses (if any), attorneys or accountants as the case may be, and to the extent possible, governmental authorities, to honor this covenant of confidentiality and non-disclosure.

(E) <u>Wage Allocation and Tax Characterization</u>. Settlement Checks paid to Class Members will be allocated fifty percent (50%) to W-2 wage payments to compensate for alleged unpaid wages and fifty percent (50%) to 1099 as non-wage liquidated damages and interest. Class Members are personally responsible for payment of all taxes and any tax liability resulting from the amount of any Settlement Checks allocated to 1099 as non-wage liquidated damages and interest. All W-2 wage payments to Class Members shall be subject to applicable payroll and withholding taxes, and all applicable Employer Payroll Taxes associated with such W-2 wage payments to Class Members shall be paid out of the Settlement Amount.

### 3.5 Mutual Non-disparagement

(A) Named Plaintiffs agree that they shall not make any statement, written, oral or electronic, which in any way disparages Defendants and Defendants agree that they shall not make any statement, written, oral, or electronic, which in any way disparages any of the Named Plaintiffs.

## 4. RELEASE

### 4.1 Release of Claims.

(A) By operation of the entry of the Judgment and Final Approval, and except as to any rights reserved or retained pursuant to this Agreement, each individual Class Member who does not submit an Opt-Out Statement pursuant to this Agreement forever and fully releases Defendants from all claims asserted, or which could have been asserted, under state or local laws by or on behalf of the Class Members arising out of work performed by the Class Members for Europan Café, LLC during the Relevant Statutory Period, including, without limitation, claims under the New York Labor Laws and any other state or local law or common law relating to or governing the failure to pay wages, overtime wages, minimum wages, unlawful wage deductions, spread of hours, derivative benefit claims (*e.g.*, claims for ERISA and/or non-ERISA benefits resulting from alleged failure to pay any wages and/or overtime), retaliation, liquidated damages, interest, penalties, Service Awards, and attorneys' fees and costs related to such claims. This release shall not discharge claims against any business entity other than Europan Café, LLC.

(B) Each Participating Class Member (as defined in Section 1.22) who does not negotiate, deposit, cash, or endorse their Settlement Check, will not release their claims under the FLSA, unless they are an Opt-in Plaintiff (as defined in Section 1.20) who has previously opted-in to the action. Each such Opt-in Plaintiff hereby releases Defendants from his/her claims under the FLSA, irrespective of

|     |     |
| --- | --- |
|     | whether he/she endorses, deposits, cashes or negotiates his/her Settlement Check. |
| (C) | Notwithstanding the release provisions set forth above in Sections 4.1(A) and (B), the Participating Class Members hereby covenant and promise not to file any lawsuits, claims or other actions of any kind against Defendants (as defined in Section 1.7) in any forum for claims asserted, or which could have been asserted, under federal, state or local laws by or on behalf of the Class Members arising out of work performed by the Class Members for Europan Café, LLC during the Relevant Statutory Period, including, without limitation, claims under the FLSA, New York Labor Laws and any other federal, state or local law or common law relating to failure to pay wages, overtime wages, minimum wages, unlawful wage deductions, spread of hours, derivative benefit claims (*e.g.*, claims for ERISA and/or non-ERISA benefits resulting from alleged failure to pay any wages and/or overtime), retaliation, liquidated damages, interest, penalties, Service Awards, and attorneys' fees and costs related to such claims. Each Participating Class Member hereby covenants and agrees that any such lawsuit, claim or other action, if filed, shall be immediately dismissed, with prejudice, against him/her promptly upon request by Defendants. |
| (D) | Except as provided in this Agreement, Class Counsel and Named Plaintiffs, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against all entities set forth in 4.1(A) above for attorneys' fees or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all Service Awards, attorneys' fees, and costs associated with Class Counsel's representation in the Litigation. |
| (E) | **General Waiver And Release Of All Claims.** |
|     | With the exception of any rights reserved or retained pursuant to this Agreement, the Named Plaintiffs hereby release Defendants from any and all liability, actions, claims, causes of action, damages, expenses or costs for any event or occurrence from the beginning of time up to the Effective Date. This release includes, but is not limited to, any action or claim under any and all causes of action, whether known or unknown, that arise out of, or relate to in any way to, the Named Plaintiffs' employment with Defendants. It includes, but is not limited to, claims that were or could have been asserted in the Litigation. It further includes, but is not limited to, claims under the FLSA, the New York Labor Law, any other applicable federal, state, or local wage and hour law, any other federal, state, or local employment law, and any common law claim or alleged duty (regardless of whether the common law claim or duty arises from contract, implied contract, quasi-contract, or tort). However, excluded from this General Waiver and Release are: (a) claims for workers' compensation; (b) claims for unemployment insurance; (c) any claims or proceedings necessary to enforce the provisions of this Agreement; and (d) any claims that cannot be waived as a matter of law. It is |

understood and agreed that this General Waiver and Release constitutes a full and final release covering all known, unknown, anticipated and unanticipated injuries, debts, claims or damages to the Named Plaintiffs which have arisen, or may have arisen, as well as those injuries, debts, claims or damages not known or disclosed which have arisen, or may have arisen, from the beginning of the world up to the Effective Date. The Named Plaintiffs further waive any and all rights or benefits which the Named Plaintiffs do not know or expect to exist at the time of their respective executions of this Agreement which, if known by them, would have materially affected this settlement with Defendants. The Named Plaintiffs agree that this is a complete and final settlement and specifically affirm their intention to release not only those claims against Defendants and the Released Parties which the Named Plaintiffs know about, but also those claims about which the Named Plaintiffs do not know about.

**4.2   Denial of Liability.**

(A)   Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, or as an admission that a class should be certified for any purpose other than settlement purposes.

(B)   Class Counsel agrees not to use the Litigation as marketing tools or for promotional purposes and shall not make any statement to the media relative to the settlement. Class Counsel agrees to remove all reference to the Litigation from its website upon execution of this Agreement except may list the case as a resolution on behalf of NYC Restaurant/Café employees without specifically naming the Defendants.

**5.   INTERPRETATION AND ENFORCEMENT**

**5.1   Cooperation Between the Parties; Further Acts.** The parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2   No Assignment.** Class Counsel and the Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3   Entire Agreement.** This Agreement constitutes the entire agreement between the parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.

5.4 **Binding Effect.** This Agreement shall be binding upon the parties and, with respect to the Named Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5 **Arms' Length Transaction; Materiality of Terms.** The parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the parties in entering into this Agreement, unless otherwise expressly stated.

5.6 **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.8 **Blue Penciling.** If any provision of this Agreement (with the exception of the release provisions) subsequently is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the Court shall modify such provision so as to render it enforceable to the maximum extent allowable. The remaining portions of this Agreement will remain in full force and effect.

5.9 **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10 **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

5.11 **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12 **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon the Effective Date. The Parties may execute this Agreement in counterparts,

and execution in counterparts shall have the same force and effect as if all parties had signed the same instrument.

**5.13** **Signatures of Named Plaintiffs.** This Agreement is valid and binding if signed by Defendants' authorized representative and by the Named Plaintiffs.

**5.14** **Facsimile and Email Signatures.** Any party may execute this Agreement by signing on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

*[REMAINDER OF PAGE INTENTIONALLY BLANK;*
*SIGNATURE PAGES IMMEDIATELY FOLLOW]*

**WE AGREE TO THESE TERMS,**

**For Plaintiffs:**

_____
Moises Dolores

3/12/14
Dated

_____
Eduardo Castelan

3/12/14
Dated

_____
Gelacio Reyes

3/14/14
Dated

_____
Gregorio Miranda

3/12/14
Dated

_____
Jorge Castelan

3/12/14
Dated

_____
Brent E. Pelton, Esq.
Taylor B. Graham, Esq.
Attorney for Plaintiffs

3/14/14
Dated

**For Defendants:**

_____  
Európan Café, LLC

Dated: 3-20-2014

_____  
Hristos Theodorou

Dated: 3-20-14

_____  
Efren Parente

Dated: 3-20-2014

_____  
Nick Glendis

Dated: 3-20-2014

_____  
Cindy S. Minniti, Esq.  
Mark S. Goldstein, Esq.  
*Attorneys for Defendants*

Dated: 03/24/2014